### TOM PEOPLES V. B. F. YOAKUM ET AL., RECEIVERS.

#### No. 732.

1. **Receiver's Liability—Preferences.**—The Act of March 19, 1889, amending sections 2 and 6 of the Act of April 2, 1887, regulating receiverships, providing that "all moneys that come into the hands of a receiver as such receiver shall be applied as follows" (enumerating six classes of claims), etc., does not affect the common law in this State as to the liability of receivers. The act provides for priorities in favor of the named classes, and does not undertake to prescribe the liabilities of receivers.

2. **Same.**—A surplus of funds after discharging the preferred classes of claims may be applied to the discharge of other liabilities against the property in the hands of a receiver.

APPEAL from Milam.   Tried below before Hon. J. N. HENDERSON.

A demurrer was sustained in the trial court against a petition against a receiver for damages caused by the negligent escape of fire from the trains of cars operated by the receiver. The plaintiff appealed.

*Hefley & Anthony*, for appellant.—1. In the operation and management of railroads by receivers in chancery they are answerable at common law, as would be the proprietors thereof, to actions for negligence causing injuries. The liabilities of a receiver in this regard are to be determined by the same rules and principles that are applicable to the company while it exercises the same powers in operating the road, and he is liable in his official capacity as receiver for injuries arising out of the prosecution of his business.

2. The Act of the Legislature of Texas concerning the appointment and management of receivers of railways does not restrict their common law liability. Blumenthal v. Brainard, 38 Vt., 402; Paige v. Smith, 99 Mass., 395; Newell v. Smith, 49 Vt., 255; Cowdrey v. Galveston, etc., Railway Company, 93 U. S., 352; Meara v. Holbrook, 20 Ohio St., 137; Sprague v. Smith, 29 Vt., 421; Gen. Laws 1887, p. 119, chap. 131; Gen. Laws 1889, p. 55, chap. 59; Turner v. Cross & Eddy, 83 Texas, 218; Railway v. Huffman, 83 Texas, 286; Railway v. Brick, 83 Texas, 526; Railway v. Comstock, 83 Texas, 537; Yoakum v. Selph, 83 Texas, 607.

*John T. Dunkan*, for appellees.—The contention of appellees is, that the common law, so far as it affects the liability of receivers, is repealed in this State, and that that subject is now controlled by our statute law. Rev. Stats., art. 1466, as amended by Act of 1889. Our contention is further, that by statute the receivers are directed what claims to pay, and if the allegations of plaintiff's petition fail to show that his claim is one which the statute provides shall be paid by the receiver, then he has no cause of action, and the suit was properly dismissed.

Our first statute on the subject of receivers was passed by the Legislature on the 2nd of April, 1887. Prior to that time receivers were subject to rules of the common law. Then a receiver could not be sued at all or in any court unless by consent of the judge in whose court the receivership was pending. Rev. Stats., art. 1468. Article 3128 declares: "The common law of England (so far as it is not inconsistent with the Constitution and laws of this State) shall, together with such Constitution and laws, be the rule of decision, and shall continue in force until altered or repealed by the Legislature." This act was first passed January 20, 1840. The question now arises, is the common law, in so far as the liabilities of receivers are concerned, in conflict with or inconsistent with article 1466, Revised Statutes, as amended in 1889. The rule that statute laws in derogation of the common law shall be strictly construed has been repealed, and section 3 of the final

title of the Revised Statutes, declaring that the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall have no application to the Revised Statutes, but said statutes shall constitute the law of this State respecting the subjects to which they relate, and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice. It is clear, therefore, that where a subject is covered by the statutes of our State, that the common law is to that extent repealed, because the common law would thereby be inconsistent with the statute. We can not have two laws covering the same subject when their provisions are necessarily inconsistent with each other.

KEY, ASSOCIATE JUSTICE.—Appellant brought this suit against B. F. Yoakum and J. S. MacNamara, as receivers of the San Antonio & Aransas Pass Railway Company, to recover damages for negligently setting fire to and destroying, while operating said railway, certain grass, timber, and fence, belonging to appellant, and situated on his land adjacent to the right of way of said railroad. Appellees demurred to appellant's petition, asserting that it stated no cause of action, and that it failed to show a liability against them as receivers. The District Court sustained these demurrers, and this ruling is the only question presented for our consideration.

From the briefs of the parties, it appears that the ruling in question was the result of the court's construction of the Act of March 19, 1889, amending sections 2 and 6 of the Act of April 2, 1887, regulating receiverships. So much of said amendatory act as affects the question under consideration reads as follows:

"All moneys that come into the hands of a receiver as such receiver shall be applied as follows: first, to the payment of all court costs of the suit; second, to the payment of all wages of employes due by the receiver; third, to the payment of all debts due by the receiver for materials and supplies purchased during the receivership by the receiver for the improvement of the property in his hands as receiver; fourth, to the payment of all debts due for betterments and improvements done during the receivership to the property in his hands as such receiver; fifth, to the payment of all claims and accounts against the receiver on contracts made by the receiver during the receivership, and for all claims for stock and personal injury, claims against said receiver accruing during said receivership, and all judgments rendered against said receiver for personal injuries and for stock killed; sixth, all judgments recovered against the person or persons or corporations in suits brought before the appointment of a receiver in the action. And said claims shall have a preference lien on all of the moneys coming into the hands of the receiver which are the earnings of the property in his hands, and the court shall see that the money

coming into the hands of the receiver as earnings of the property in his hands is paid out on the claims against said receiver in the order of their preference as named above, and it shall be the duty of the receiver to pay the funds in his hands which are the earnings of the property while in his hands as receiver on the claims against him in the order of preference named above.

"All judgments recovered against a receiver for cause of action arising during the receivership shall be a preference lien upon all the property in his hands as such receiver superior to the mortgage lien." Laws 1889, p. 55; Addendum to Sayles' Civ. Stats., art. 1466.

It is contended on behalf of appellees, and appears to have been held by the trial court, that this statute repeals the common law in this State, in so far as it affects the liability of receivers.

After a careful consideration of the question, this court has reached a different conclusion.

The argument is, that as the statute declares that all funds that come into the hands of a receiver shall be applied to the claims therein designated, therefore no claim not therein enumerated can be made the basis of the receiver's liability.

Whether or not the Legislature has the power to exempt receivers from liability for a wrongful destruction of or injury to another's property, when the wrongful act is committed in the prosecution of the business for which the receiver was appointed, we need not determine; because, in our opinion, the statute in question is not susceptible of that construction.

This statute does not, as argued by appellees' counsel, undertake to define and prescribe the liabilities of receivers. Its manifest purpose is to prescribe the order in which certain claims shall be paid; to definitely fix and determine the question of priorities. It does not attempt to create, enlarge, or diminish liabilities. It merely enumerates and classifies certain liabilities already fixed by law, and prescribes the order in which they shall be paid.

A receiver is merely the legal representative of the property placed in his hands as such. In determining his liability we only determine the liability of the property. Nor is it material whether the liability existed before, or has accrued since, his appointment. A pre-existing debt against the owner of the property is as much a liability against the receiver as is a debt contracted by him for the benefit of the property. Nor does it make any difference in what court the question of liability arises. It may be in the court where the receivership is pending, or, as in this case, in a separate suit in another tribunal. And it should also be borne in mind, that in deciding the mere question of liability, when the court is not asked to determine any question of priority, whether or not the assets will be sufficient to discharge any part of the asserted liability is a matter of no consequence.

It is with this understanding as to the liabilities of receivers, prior to the passage of the statute in question, that it should be examined to see if it was the legislative intention to restrict those liabilities, and exclude such as are not enumerated in the statute.

Such examination discloses the fact, that but one of the six classes of claims designated in the statute could possibly include a liability existing before the appointment of the receiver; and that class is limited to, and embraces, at most, only such claims as have been placed in suit before the appointment of the receiver. For instance, the corporation owning the property in appellees' hands as receivers may have contracted, and in all probability did contract, debts that were unpaid and had not been sued on when appellees were appointed receivers. If so, and appellees should have in their hands surplus funds, after discharging all the claims designated by the statute, if their contention be correct, the court would have no right to order them to apply such surplus to the payment of said debts; because, as they are not embraced in either class named in the statute, they would not be liabilities against the property of the debtor in appellees' hands as receivers.

We need not consider the power of the Legislature to pass a law that would produce such results, for it is quite certain that the statute under consideration was not intended to have any such effect. Its provisions declaring that the claims therein named shall have a preference lien on the earnings on the property, and attempting to accord to claims accruing after the appointment of a receiver priority over pre-existing debts secured by mortgages, indicate that the Legislature contemplated the existence of other liabilities against receivers.

Besides, this statute purports to amend only sections 2 and 6, and we do not understand appellees' counsel to maintain that it in anywise modifies the first section of the Act of April 2, 1887, which, in designating the cases in which receivers may be appointed, enumerates three classes, and then adds a fourth, as follows: "In all other cases where receivers have heretofore been appointed by the usages of the courts of equity." This clearly manifests the legislative purpose not to restrict the liability of property in the hands of a receiver to the claims designated in the statute invoked by appellees; because, by the usages of the courts of equity, the owners of other claims than those named in the statute might, in a proper case, procure the appointment of a receiver, or, after his appointment, establish their claims as a valid liability against him.

Although the literal reading of the statute is, that "all the moneys that come into the hands of a receiver, as such," shall be applied to the debts therein designated, we do not understand appellees to insist, and it certainly can not be successfully asserted, that the Legislature intended that any more money should be applied to those claims than

might be necessary to pay them; and if any surplus should remain in the hands of a receiver, after discharging the claims therein named, it must either be applied to the satisfaction of other demands, or delivered to the owner of the property.

This case is distinguishable from Turner v. Cross & Eddy, 83 Texas, 218. In that case the court construed a statute, the very purpose of which was to create a liability that never existed at common law; and as the statute enumerated those against whom a cause of action should exist and did not include receivers, it was held that it created no cause of action against them. The distinction lies in the difference between liabilities and priorities. The statute construed in the Turner case created liabilities. The statute invoked in this case regulates priorities.

For the error in sustaining the demurrers to appellant's petition, the judgment appealed from is reversed and the cause remanded.

*Reversed and remanded.*

Delivered April 4, 1894.