## State of Indiana *v.* Louisville and Nashville Railroad Company.

[No. 21,807.   Filed November 2, 1911.   Rehearing denied May 10, 1912.]

1.  Constitutional Law.—*Statutes.—Construction.*—Where a statute is susceptible of two constructions, one of which will render it invalid, the construction which will so limit its application as to render it valid will be adopted, on the theory that the legislature intended to enact a constitutional law, and that the courts will not declare an act invalid if there is any doubt about it. pp. 556, 558.

2.  Constitutional Law.—*Statute.—Automatic Bell Ringers.—Police Power.—Extraterritorial Effect.*—The act of March 8, 1909 (Acts 1909 p. 441), requiring all railroad companies operating within the State to equip locomotive engines with automatic bell ringers, does not have an extraterritorial effect, but is a police regulation restricted to this State.   p. 557.

3.  Constitutional Law.—*Penal Statute.—Construction.*—The rule of strict construction of penal statutes does not apply in all its strictness in the consideration of the constitutionality of a statute, but in such case a broad latitude is indulged in favor of the lawmaking power.   p. 557.

4.  Railroads.—*Regulation.—Ringing Bell.—Statutes.—Rejection of Surplusage.*—The Act of March 8, 1909 (Acts 1909 p. 441), requiring all railroad companies operating within the State properly to equip locomotive engines with efficient automatic devices for ringing the bell, and that such devices shall at all times be kept in proper working order, is not void for indefiniteness and uncertainty because of the use of the words "proper," "efficient" and "properly," since the purpose of the statute is to accomplish the automatic ringing of the bell, and the words "proper," "efficient" and "properly" may be properly eliminated as redundant and surplusage in the construction of the statute without in any way affecting it.   pp. 558, 560.

5.  Statutes.—*Construction.—Surplusage.*—The rule that unnecessary words may be rejected from a statute, if required to support its validity, applies to penal as well as to civil statutes.   p. 559.

6.  Statutes.—*Construction.—Consideration as a Whole.*—In the construction of a statute all its parts should be looked to and its entire import should be considered.   p. 560.

7.  Words and Phrases.—*"Proper."—"Properly."—"Efficient."*—The words "proper," "properly," or "efficient," are not neces-

sarily relative terms, but may in some connections be definite and specific terms when used in connection with a definite subject-matter. p. 560.

8. RAILROADS.—*Regulation.—Automatic Bell Ringer.—Statute.—Indefiniteness.*—"Properly" equipped with an "efficient" automatic device kept in "proper working order," as applied to the subject of bells on locomotives in the act of March 8, 1909 (Acts 1909 p. 441), are not indefinite, and they mean a device adapted to the accomplishment of the purpose of ringing such bells automatically. p. 561.

9. WORDS AND PHRASES.—*"Automatically."*—"Automatically," when applied to a mechanical device, means acting without the continued application of human agency or volition, that is, as opposed to acting rationally or volitionally. p. 561.

10. RAILROADS.—*Regulation.—Automatic Bell Ringer.—Statutes.*—The act of March 2, 1911 (Acts 1911 p. 132), amending the act of March 8, 1909 (Acts 1909 p. 441), while being specific as to the character of device which must be used for automatically ringing the bell of a locomotive engine, is not more specific than the act which it amended as to the requirements to be met, the offense under either act being a failure to equip with an automatic bell ringing device. p. 561.

11. RAILROADS.—*Regulation.—Automatic Bell Ringer.—Failure to Equip.—Prosecution.—Sufficiency of Affidavit.*—An affidavit in a prosecution against a railroad company for failing to equip its locomotive with an automatic bell ringing device as required by the act of March 8, 1909 (Acts 1909 p. 441), is not insufficient for failing to allege that the locomotive was equipped with a bell so as to permit a second prosecution for the same offense under §§5431, 5432 Burns 1908, §§4020, 4021 R. S. 1881, since if there was no bell on the locomotive no automatic ringing device could be there, and the act of 1909 is supplemental to §5431 requiring a bell to be attached to each locomotive. p. 562.

12. CRIMINAL LAW.—*Judicial Knowledge.—Mechanical Facts.—Automatic Bell Ringer.*—The Supreme Court knows that automatic bell ringing devices are employed on locomotives, and that many automatic devices for ringing bells are in use in other situations. p. 562.

13. CRIMINAL LAW. — *Judicial Knowledge. — Mechanical Facts. —* The court takes judicial notice that any mechanical device may and will, if not looked after, get out of order from use, wear and age, and become inefficient for the purposes of its construction, but the court also knows that it may be repaired and kept in such order as will accomplish its design, it being presumed that regular and ordinary means are adopted for a given end. p. 563.

14. CRIMINAL LAW.—*Presumptions.—Performance of Public Duty.* —It will be presumed that a public duty can and will be performed.   p. 563.

15. RAILROADS. — *Regulation.—Bells on Locomotives.—Inspection and Efficiency.—Duty.*—The requirement for bells on locomotives, and their ringing, is a police regulation, and the duty to inspect and use ordinary care in keeping them efficient is a continuing one.   p. 563.

16. RAILROADS. — *Regulation. — Statute.—Surplusage.*—The words "at all times," in the act of March 8, 1909 (Acts 1909 p. 441), requiring railroad locomotives to be properly equipped with automatic bell ringing devices and that such devices be "at all times" kept in proper working order, are surplusage, since without them the statute requires the use of automatic bells on locomotives when in use, and in case of accident or other intervention rendering the ringing of the bell impossible it would be a question for the jury as to whether it is excusable under the particular circumstances.   p. 563.

From Vanderburgh Circuit Court; *A. C. Hawkins,* Judge *Pro Tem.*

Prosecution by the State of Indiana against the Louisville and Nashville Railroad Company. From a judgment quashing the affidavit, the State appeals. *Reversed.*

*Thomas M. Honan,* Attorney-General, *Thomas H. Branaman, Edward M. White, James E. McCullough* and *Edwin Corr,* for the State.

*Philip W. Frey* and *George R. DeBruler,* for appellee.

MYERS, J.—An affidavit was filed in the city court of the city of Evansville against appellee under the act of March 8, 1909 (Acts 1909 p. 441), which affidavit, omitting the formal parts, alleged that the Louisville and Nashville Railroad Company, a corporation, on or about June 8, 1910, at said county, as affiant verily believes, did then and there unlawfully operate and use, and permit to be used, a certain locomotive on its respective lines of railroad within said county and State, said locomotive not being then and there properly equipped with an efficient automatic device for ringing the bell of such locomotive, etc.

c

Appellee entered a plea of not guilty, and on trial was fined $100, from which judgment it appealed to the Vanderburgh Circuit Court, where on its motion the affidavit was quashed, and the State excepted and prosecutes this appeal, predicating error of the court in that ruling.

It will be noted that the affidavit is drawn in the language of the statute.

Appellee's contention is that the act is void for five reasons, which are chiefly urged in support of the insufficiency of the affidavit. They are as follows: That the act of 1909, *supra*, is void, for the reason that it attempts to govern railroads beyond the State of Indiana; that the affidavit is insufficient, because it is not averred that the locomotive engine was equipped with a bell, and therefore appellee could hereafter be prosecuted for failing to equip such locomotive with a bell, and thereby be punished twice for the same offense; that the act requires the performance of an impossibility, in that there is no such thing as an automatic device for ringing a bell, and hence it is void; that the act is void for indefiniteness and uncertainty, in that it requires the automatic device to be kept at all times in proper working order; that it is void for uncertainty and indefiniteness, in that it requires the automatic device to be efficient, and requires the locomotive to be properly equipped with such service.

The title of the act is, "An Act requiring all railroad companies within the State of Indiana to equip locomotive engines with an automatic bell ringer, providing penalties for its violation, and fixing the time for said Act to become effective and be in force." The act itself applies by its terms to railroads "operating within said State," and if the language "operating within said State," is susceptible of a construction which would refer to railroads without the State, which would render it invalid, we would adopt the construction which would so limit its application as to render it valid, on the theory that the legislature intended to enact a constitutional law, and not one that is

void, and that we will not declare an act invalid if there is any doubt about it. *Smith* v. *Board, etc.* (1910), 173 Ind. 364, 90 N. E. 881; *State* v. *Barrett* (1909), 172 Ind. 169, 87 N. E. 7; *Pittsburgh, etc., R. Co.* v. *Railroad Com., etc.* (1908), 171 Ind. 189, 86 N. E. 328; *Kraus* v. *Lehman* (1908), 170 Ind. 408, 83 N. E. 714, 84 N. E. 769; *McCleary* v. *Babcock* (1907), 169 Ind. 228, 82 N. E. 453; *Cain* v. *Allen* (1907), 168 Ind. 8, 79 N. E. 201; *State* v. *Lowry* (1906), 166 Ind. 372, 77 N. E. 728, 4 L. R. A. (N. S.) 528; *State* v. *Gerhardt* (1896), 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 313; *Smith* v. *Indianapolis St. R. Co.* (1902), 158 Ind. 425, 63 N. E. 849; *Cleveland, etc., R. Co.* v. *Backus* (1893), 133 Ind. 513, 33 N. E. 421, 18 L. R. A. 729; *Bush* v. *City of Indianapolis* (1889), 120 Ind. 476, 22 N. E. 422; *Hovey* v. *State, ex rel.* (1889), 119 Ind. 395, 21 N. E. 21; *Clare* v. *State* (1879), 68 Ind. 17.

The act could have no extraterritorial effect, and does not by fair construction purport to do so, and we know judicially that if such device can be arranged to be operated by

2. railroad companies within the State, it need not be operated without the State, except at their option, and they cannot be heard to complain of a statute which does not affect them without the State, but is a police regulation restricted to this State. *Hammer* v. *State* (1909), 173 Ind. 199, 89 N. E. 850, 24 L. R. A. (N. S.) 795; *Knight & Jillson Co.* v. *Miller* (1909), 172 Ind. 27, 87 N. E. 823; *Harlin* v. *Schafer* (1901), 169 Ind. 1, 81 N. E. 721; *Wilkison* v. *Board, etc.* (1902), 158 Ind. 1, 8, 62 N. E. 481; *State* v. *Gerhardt, supra; Wagner* v. *Town of Garrett* (1889), 118 Ind. 114, 117, 20 N. E. 706.

The rule of strict construction of penal statutes does not apply in all its strictness, in the consideration of the constitutionality of a statute, in which case, a broad latitude is indulged in favor of the lawmaking power.

3. *State* v. *Hogreiver* (1889), 152 Ind. 652, 657, 53 N. E. 921, 45 L. R. A. 504.

Courts will not construe a statute as unconstitutional, where the words of the statute do not, by fair construction, impel that result, or where it may be limited within

1. constitutional bounds, and the intention carried out. *Stiers* v. *Mundy* (1910), 174 Ind. 651, 92 N. E. 374; *Pittsburgh, etc., R. Co.* v. *Railroad Com., etc.* (1908), 171 Ind. 189, 86 N. E. 328, 332; *United States Express Co.* v. *State* (1905), 164 Ind. 196, 214, 73 N. E. 101; Endlich, Interp. of Stat. §§178, 179; 2 Lewis's Sutherland, Stat. Constr. (2d ed.) §§519, 521, 528, 530.

It may be conceded that the act is not carefully drawn, and that its language, broadly read, might include railroad companies operating out of, as well as in the State, but it is so manifest that if it sought to reach operation without the State it would be void, that no such interpretation will lie as against a coördinate branch of government, while the language used is not such as to impel that inference or construction, and fairly construed means while operating within the State, and, as we have seen, that construction is not only permissible, but is just.

As to the fourth and fifth points, that the act is void for indefiniteness and uncertainty, the point is made that the

4. words "proper," "efficient" and "properly" are relative terms, and there is no standard created by which to determine when a crime has been committed, and reliance is placed on *Chicago, etc., R. Co.* v. *Town of Salem* (1906), 166 Ind. 71, 76 N. E. 631, *Cook.* v. *State* (1901), 26 Ind. App. 278, 59 N. E. 489, and *Louisville, etc., R. Co.* v. *Commonwealth* (1896), 99 Ky. 132, 35 S. W. 129. In the first of these cases the ordinance was held invalid, because it was not sufficiently specific, in that it left the matter open to proof as to what the standard, as fixed by the ordinance, was, and that persons to be penalized could not be required to take notice of the character of light the town might have at any given time, and subject to such changes as it might make from time to time. In *Cook* v. *State, supra,* the statute left

it wholly open to opinion of witnesses as to what is a ''broad tired'' wagon, or a ''narrow tired'' wagon. The Kentucky statute used the term ''just and reasonable rate.'' What would be a just and reasonable rate is a subject of greatly varying opinion, without any standard, and the cases are clearly right on the facts shown, but that is not the case with the statute before us.

This statute is designed to accomplish a definite result, the automatic ringing of a bell. There can be no middle ground, or comparative condition arise. A bell either would be rung or not rung, so that the word ''properly'' may be wholly eliminated as unnecessary, for it is of no force in describing the offense. Neither the words ''properly'' nor ''efficient'' seek to characterize the offense by comparison with any standard or any result produced, or sought to be produced. They aim at a result, and do not seek to characterize or define an offense at all. A locomotive equipped with an automatic device for ringing the bell, which does so, and such device kept in working order, is necessarily ''properly'' equipped, and a device which rings a bell automatically is necessarily ''efficient,'' and if kept in working order at all must necessarily be in ''proper'' working order, so that the words ''properly,'' ''efficient'' and ''proper,'' in this statute, are unnecessary, and may properly be eliminated as redundant and surplusage in its construction, without in any wise affecting it, and this rule applies to penal, as

5. well as to civil statutes. *Voris* v. *Pittsburgh Plate Glass Co.* (1904), 163 Ind. 599, 72 N. E. 249; *State* v. *Brandt* (1875), 41 Iowa 593; *State* v. *Myers* (1860), 10 Iowa 448; *Commonwealth* v. *Marshall* (1871), 69 Pa. St. 328; *Chapman* v. *State* (1884), 16 Tex. App. 76; Endlich, Interp. of Stat. §§301, 302, 304; 2 Lewis's Sutherland, Stat. Constr. (2d ed.) §384.

But even with the words retained, what is to be understood from it? One object alone is sought, viz., the automatic ringing of a bell in the operation of locomotives. If that re-

sult is produced, it is because a locomotive is "properly" equipped with an automatic device which is "efficient," and kept in working order, it is in proper working order. In other words, it is not left to any one to say that the locomotive is "properly" or improperly equipped, or that the device is sufficient or insufficient, or whether it is in "proper" or improper working order. Those are matters wholly committed and entrusted to railroads. The result only is looked to, and there can be only one affirmative or negative result, either the ringing of a bell, or its not ringing. The statute in all its parts should be looked to with a common-sense view and consideration of its entire import. *Boyer* v. *State* (1908), 169 Ind. 691, 83 N. E. 350; *State* v. *Indiana, etc., R. Co.* (1892), 133 Ind. 69, 32 N. E. 817, 18 L. R. A. 502; *Stout* v. *Board, etc.* (1886), 107 Ind. 343, 8 N. E. 222; *Cooper* v. *Metzger* (1881), 74 Ind. 544; *Trinity County* v. *Polk County* (1883), 58 Tex. 321; *Leversee* v. *Reynolds* (1862), 13 Iowa 310; *Paxton & Hershey, etc., Co.* v. *Farmers, etc., Irrigation Co.* (1895), 45 Neb. 884, 64 N. W. 343, 50 Am. St. 585, 29 L. R. A. 853; *State* v. *Acuff* (1839), 6 Mo. 54; *State* v. *Beasley* (1837), 5 Mo. 91.

Neither is it true that the words "proper," "properly" or "efficient" are relative terms. They may in some connections be definite and specific terms when used in connection with a definite subject-matter; as for example, the "proper" county in connection with other statutes, as to the county in which a suit is brought, where the subject-matter, or a specific statute fixes the proper county *(Eel River R. Co.* v. *State, ex rel.* [1896], 143 Ind. 231, 233, 42 N. E. 617; *Cook* v. *Pendergast* [1882], 61 Cal. 72; *State, ex rel.,* v. *Town of Lake* [1881], 28 Minn. 362, 10 N. W. 17; *In re Keenan's Estate* [1889], 5 N. Y. Supp. 200, 201); or in a "proper" manner, referring to a contract which specified the manner in which it should be done *(Henderson Bridge Co.* v. *O'Connor & McCulloch* [1889],

88 Ky. 303, 11 S. W. 18) ; or a "proper" court, as synonymous with a court of competent jurisdiction *(Montour* v. *Purdy* [1866], 11 Minn. 384, 88 Am. Dec. 88) ; "properly" handled and transported, implying handling with reasonable care *(Missouri, etc., R. Co.* v. *Chittim* [1900], 24 Tex. Civ. App. 599, 60 S. W. 284) ; "properly" guarded, as applied to dangerous machinery, to meet the demands of reasonable safety *(Spaulding* v. *Tucker & Carter Cordage Co.* [1895], 34 N. Y. Supp. 237, 13 Misc. Rep. 398) ; "properly" made as applied to surveys, are such as are aptly applied to the legality of surveys *(Adams* v. *Houston, etc., R. Co.* [1888], 70 Tex. 252, 7 S. W. 729) ; "properly" provisioned, as applied to the duty of a sailing master *(United States* v. *Reed* [1897], 86 Fed. 308) ; "proper" representative, as applied to the successor in interest of a deceased mortgagor *(Zaegel* v. *Kuster* [1881], 51 Wis. 31, 7 N. W. 781) ; "proper" residence, as applied to the support of an insane person; "properly" shod, as applied to the organic peculiarity and gait of a horse *(Morse* v. *Pitman* [1885], 64 N. H. 11, 4 Atl. 880).

"Properly" equipped with an "efficient" automatic device kept in "proper working order," as applied to the subject of bells on locomotives, can mean nothing else, or more, than a device adapted to the accomplishment of the purpose of ringing such bells automatically, and the words are not indefinite, and do not require any evidence in determining the question whether a locomotive is equipped with a bell which automatically rings. "Automatically," when applied to a mechanical device, means acting without the continued application of human agency, or volition; that is, as opposed to acting rationally or volitionally *(Cleveland Target Co.* v. *Empire Target Co.* [1899], 97 Fed. 44; Standard Dictionary, "Automatic").

The amendment of the act of 1909 (Acts 1909 p. 441), by the act of March 2, 1911 (Acts 1911 p. 132), is urged

on our attention as indicating the legislative opinion as to the act of 1909. It may be admitted that the later act is specific as to the character of device which must be used, but it is not more specific as to the requirements to be met, than the former act. It restricts the character of the power to be used, but under the first act any or all of them may be used, or any other the operatives see fit to use. The offense under either act is failure to equip with an automatic bell ringing device.

As to the second point, it is contended that the affidavit is insufficient, for the reason that it is not alleged that the locomotive was equipped with a bell; and as there is another statute (§§5431, 5432 Burns 1908, §§4020, 4021 R. S. 1881), claimed to affix a penalty for failure to equip a locomotive with a bell, appellee may be punished twice for the same offense. Section 5431, supra, defines a civil duty of railroad companies, with no penalizing clause or provision. Section 5432, supra, penalizes the operator of an engine for failing to comply with the provisions of §5431, supra, as to giving signals. But apart from these facts, if there was no bell on the locomotive, it is clear that an automatic ringing device could not be there, while under §5431, supra, a bell is required on each locomotive, and the act of 1909, supra, is supplemental to §5431.

It is next urged that there is no such thing as an automatic device for ringing bells, and that it is impossible to keep any device in "proper working order" at all times, and that the court judicially knows those facts, and that the act is void for that reason. To borrow the language of Chief Justice Caton, "Courts will not pretend to be more ignorant than the rest of mankind," but they certainly cannot know judicially that it is impossible to construct an automatic bell ringing device. This court does know, as a fact, that automatic bell ringing devices are employed on locomotives, and that many automatic de-

vices for ringing bells are in use in other situations, and we must assume that the possibility of such device being applied was a question before the legislature, on which it informed itself in enacting the statute.

*State* v. *Barrett* (1909), 172 Ind. 169, 180, 181, 87 N. E. 7; *Eagan* v. *State* (1876), 53 Ind. 162; *Kinney* v. *Koopman & Gerdes* (1896), 116 Ala. 310, 22 South. 593, 37 L. R. A. 497, 67 Am. St. 119; *Commonwealth* v. *Peckham* (1854), 2 Gray 514; *Frese* v. *State* (1887), 23 Fla. 267, 2 South. 1.

Nor can courts judicially know that such devices may not be so constructed as to be kept in working order, within the meaning of the statute. The court does take judicial notice, or at least the fact will be presumed as a matter of common knowledge, that any mechanical device may and will, if not looked after, get out of order, from use, wear and age, and become inefficient for the accomplishment of the purposes of its construction, but the court also knows that it may be repaired, and kept in such order as will accomplish its design, and that is all that is meant or intended under this statute. That is, it will be presumed that regular and ordinary means are adopted for a given end *(Johnston* v. *Barrills* [1895], 27 Or. 251, 41 Pac. 656, 50 Am. St. 717), and that a public duty can and will be performed *(Clements* v. *Louisiana, etc., Light Co.* [1892], 44 La. Ann. 692, 11 South. 51, 16 L. R. A. 43, 32 Am. St. 348).

The requirement for bells on locomotives, and their ringing, is a police regulation, and the duty to inspect, and use ordinary care in keeping them efficient, is a continuing one. *Indiana Car Co.* v. *Parker* (1885), 100 Ind. 181.

Hence the words, "at all times," are surplusage, for without them the statute requires the use of automatic bells on locomotives when in use.

In a specific case of accident or other intervention, if

ringing the bell becomes impossible, that would present a question for a jury, as to whether it is excusable under the particular circumstances.

The judgment is reversed, with instructions to the court below to overrule the motion to quash the indictment, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 96 N. E. 340. See, also, under (1) 8 Cyc. 803; (2) 8 Cyc. 871; 33 Cyc. 648; 13 L. R. A. (N. S.) 320; (3) 8 Cyc. 801; (4) 33 Cyc. 650; (5) 36 Cyc. 1127; (6) 36 Cyc. 1128; (7) 14 Cyc. 1231; 32 Cyc. 637; 32 Cyc. 638; (8) 33 Cyc. 650; (9) 4 Cyc. 1075; (10) 33 Cyc. 650, 678; (11) 33 Cyc. 691; (12) 16 Cyc. 877; (13) 16 Cyc. 855; (14) 12 Cyc. 384; 16 Cyc. 1081; (15) 33 Cyc. 663; (16) 33 Cyc. 650; 36 Cyc. 1127. As to State regulation of railroads as an interference with interstate commerce, see 7 Ann. Cas. 5; 13 Ann. Cas. 147; 32 L. R. A. (N. S.) 20. As to constitutionality of a statute having a title more comprehensive than the act itself, see Ann. Cas. 1912A 102.